IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO.    19-CR-00533-DDD

UNITED STATES OF AMERICA,

       Plaintiff,

v.

AYGAZ USTYAN,

       Defendant.
_____

**UNOPPOSED MOTION TO REOPEN DETENTION HEARING
PURSUANT TO 18 U.S.C. SECTION 3142(f)(2)(B) AND TO RELEASE MR. USTYAN**
_____

       Defendant Aygaz Ustyan, by and through counsel, moves the Court to release Mr. Ustyan.  The government, through Assistant United States Attorney Bryan Fields, the United States Probation Office, through USPO Dan Bath, and undersigned counsel jointly and respectfully request this Court reopen the detention hearing in this matter pursuant to Title 18 United States Code Section 3142(f)(2)(B) and find that there are a set of conditions that will assure both Mr. Ustyan's appearance in court and the safety of the community.

       Mr. Ustyan was arrested on April 30, 2020 for allegedly violating his supervised release.  At his detention hearing on May 5, 2020, the parties requested that Mr. Ustyan be released to an inpatient substance abuse program.  The Court indicated its willingness to release Mr. Ustyan when a bed space became available in such a program.  Since then, for the last six weeks, undersigned counsel and USPO Bath have attempted to get Mr. Ustyan accepted and admitted into a substance abuse program.

However, because of the COVID-19 pandemic, stay-at-home orders, and safer-at-home measures, Harbor Lights, the inpatient program USPO Bath thinks is the best fit for Mr. Ustyan, is not currently accepting new patients.  Mr. Ustyan remains in custody at the Federal Detention Center, awaiting some unknown date in the future when he can enter Harbor Lights.

Meanwhile, the United States Marshals report that there is an active COVID-19 outbreak at the Federal Detention Center.  As of yesterday, June 11, 2020, there were 4 inmates who tested positive for the virus and 19 inmates who were being quarantined because of possible exposure to the virus.  Mr. Ustyan is not one of them but he grows increasingly worried that he will get sick.  As this Court is undoubtedly aware, COVID-19 is a serious illness that is sometimes deadly even when contracted by otherwise healthy people.  If Mr. Ustyan were to be infected, there is no telling how the virus would impact him.  Conditions of pretrial confinement create the ideal environment for the transmission of contagious disease.[1]  Incarcerated people have poorer health than the general population, and even at the best of times, medical care is limited in federal pretrial detention centers.[2]  According to public health experts, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings."[3]  Practicing the necessary hygiene, such as washing

---

[1] Joseph A. Bick (2007). Infection Control in Jails and Prisons. *Clinical Infectious Diseases* 45(8):1047-1055, *at* https://doi.org/10.1086/521910.

[2] Laura M. Maruschak et al. (2015). Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-12. NCJ 248491. Washington, D.C.: U.S. Department of Justice, Bureau of Justice Statistics, *at* https://www.bjs.gov/content/pub/pdf/mpsfpji1112.pdf

[3] "Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health

hands, covering your mouth with a tissue when you cough or sneeze, and using hand sanitizer and disinfectants, is difficult in jail:

> Hand sanitizer is often treated as contraband because it contains alcohol. Even if incarcerated people have access to water, they often have nothing to wipe their hands on…in jails and prisons, access to toilet paper or tissues is often limited and covering your mouth can be impossible if you're handcuffed, either because of security status or during transport to another facility.[4]

Outbreaks of the flu regularly occur in jails, and during the H1N1 epidemic in 2009, many jails and prisons dealt with high numbers of cases.[5] Given that COVID-19 is already at the Federal Detention Center, it is only a matter of time before Mr. Ustyan contracts the disease.

Title 18 U.S.C. Section 3142(f)(2) allows this Court to re-open a detention hearing in light of "information not known" at the time of the detention hearing that is material to the question of detention. The length of time that it is taking to get Mr. Ustyan into an inpatient substance abuse program and the COVID-19 outbreak at the Federal Detention Center is new information that was not considered by this Court at Mr. Ustyan's detention hearing on May 5, 2020. Therefore, this Court can reopen the detention hearing pursuant to Title 18 U.S.C. Section 3142(f)(2).

There are conditions that will reasonably assure Mr. Ustyan's appearance in court and the safety of the community. 18 U.S.C. 3142(f). The parties jointly request the Court release Mr. Ustyan to the custody of his parents, where he will be able to safely self-quarantine in their basement for 14 days. In addition to the conditions of

---

and Legal Experts in the United States," (March 2, 2020), *at* https://bit.ly/2W9V6oS.
[4] Explainer: Prisons and Jails are Particularly Vulnerable to Covid-19 Outbreaks, The Justice Collaborative, https://thejusticecollaborative.com/wp-content/uploads/2020/03/TJCVulnerabilityofPrisonsandJailstoCOVID19Explainer.pdf.
[5] *Prisons and Jails are Vulnerable to COVID-19 Outbreaks*, The Verge (Mar. 7, 2020) *at* https://bit.ly/2TNcNZY.

supervised release that are already imposed, he will be required to submit to weekly urinalysis testing and will be made to start the Harbor Lights program once it begins accepting new patients. While Mr. Ustyan would be required to self-quarantine for the first 14 days upon release from the Federal Detention Center, after that, he would have a job waiting for him at M.M. Warehouse, located at 1963 Jasper Street, Aurora, Colorado, where he works as a forklift operator. At his detention hearing on May 5, 2020, undersigned counsel submitted a letter from his supervisor, Edward Benitez, confirming his continued employment. *See* Exhibit A, letter from Edward Benitez. Mr. Ustyan's girlfriend, Desiree O'Farrell, just gave birth to his first child on April 23, 2020. She is a 5th grade teacher at Aurora Public Schools who is currently on maternity leave. She serves as a source of strength for Mr. Ustyan and will ensure his compliance with all court orders, including driving him to and from any court dates. *See* Exhibit B, letter from Desiree O'Farrell, which was submitted to the Court at his detention hearing on May 5, 2020.

/ / /

## **Conclusion**

For all of the above reasons, Mr. Ustyan respectfully requests this Court reopen the detention hearing in this matter, find that there are conditions that will reasonably assure Mr. Ustyan's appearance in court and the safety of the community, and grant his release on bond.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender


s/ Jennifer Beck
JENNIFER BECK
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
Jennifer_Beck@fd.org
Attorney for Defendant

**CERTIFICATE OF SERVICE**

  I hereby certify that on June 12, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

 Bryan Fields, AUSA
 Email: Bryan.Fields@usdoj.gov

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

 Aygaz Ustyan       (via Mail)


          s/ Jennifer Beck
          JENNIFER BECK
          Assistant Federal Public Defender
          633 17th Street, Suite 1000
          Denver, CO  80202
          Telephone:  (303) 294-7002
          FAX:  (303) 294-1192
          Jennifer_Beck@fd.org
          Attorney for Defendant